No. 23-1071

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

⎯⎯⎯⎯⎯⎯⎯⎯⎯

**UNITED STATES OF AMERICA,**

Plaintiff-Appellant,

v.

**GREGORY BROWN,**

Defendant-Appellee.

⎯⎯⎯⎯⎯⎯⎯⎯⎯

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
No. 2:92-cr-81127
Honorable David M. Lawson

⎯⎯⎯⎯⎯

**APPELLEE'S BRIEF**

⎯⎯⎯⎯⎯

**FEDERAL COMMUNITY DEFENDER**

Laura Danielle Mazor
Benton Martin
Counsel for Appellee Gregory Brown
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5542

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

REQUEST FOR ORAL ARGUMENT ...................................................... 1

ISSUES PRESENTED ........................................................................ 2

INTRODUCTION .............................................................................. 3

STATEMENT OF THE CASE ............................................................... 5

   I.  Gregory Brown's Personal Background ........................................ 5

   II.  Procedural History ............................................................... 7

     A. Underlying Criminal Proceedings ..................................... 7

     B. Section 404 Proceedings ................................................ 13

SUMMARY OF THE ARGUMENT ....................................................... 19

ARGUMENT ................................................................................... 21

   I.  As a Matter of First Impression, Brown is Eligible for Relief under Section 404(b) of the First Step Act. ........................................ 21

     A. Standard of Review ....................................................... 21

     B. Brown is eligible for relief under the plain terms of the First Step Act. ..................................................................... 21

     C. Brown is eligible for relief under the government's sentencing-package theory. ........................................................... 27

   II.  The Government Waived or Forfeited its Arguments about Brown's Eligibility under the Sentencing-Package Theory in Two Distinct Ways. .................................................................................. 30

A. Standard of Review ....................................................................... 31

B. The government waived or forfeited its opportunity to object to the 1997 decision grouping the covered and non-covered offenses. ... 32

C. The government waived, or at least forfeited, its eleventh-hour protestations concerning Brown's § 404 eligibility under the sentencing-package doctrine. ......................................................... 35

III. *Concepcion* Prohibits Courts in § 404 Proceedings from Revisiting Almost All Guidelines Determinations, Including Those involving Grouping. ...................................................................................... 37

A. Standard of Review ....................................................................... 38

B. Supreme Court precedent prevents this Court from revisiting the grouping of Brown's covered and non-covered offenses. .............. 38

IV. The District Court Did Not Abuse its Discretion by Reducing Brown's Sentence to the Equivalent of 31 Years. ........................... 41

A. Standard of Review ....................................................................... 41

B. The district court correctly identified the applicable penalties, including the recalculated guidelines range, and acknowledged the relevance of intervening changes in sentencing law. ................... 43

C. The district court's discussion of the § 3553(a) factors supported a downward variance from the advisory guidelines range of life. ... 47

CONCLUSION ............................................................................................ 61

CERTIFICATE OF COMPLIANCE ........................................................... 62

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS . 63

CERTIFICATE OF SERVICE .................................................................... 65

ii

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Fed. Bureau of Prisons*, 552 U.S. 214 (2008) ................................ 25

*Alleyne v. United States*, 570 U.S. 99 (2013) .................................... 40, 46

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ................................... 45, 46

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003) ............................... 24

*Concepcion v. United States*, 597 U.S. 481 (2022) .......................... passim

*Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 67 F.4th 773 (6th Cir. 2023) ................................................................................ 21, 38

*Gall v. United States*, 552 U.S. 38 (2007) ............................................... 42

*Jones v. Mississippi*, 593 U.S. --, 141 S. Ct. 1307 (2021) ........................ 49

*Karam v. Sagemark Consulting, Inc.,* 383 F.3d 421 (6th Cir.2004) ....... 31

*Kimbrough v. United States*, 552 U.S. 85 (2007) .................................... 23

*Koons v. United States*, 518 U.S. 81 (1996) ..................................... 47, 57

*McNeil v. United States*, 508 U.S. 106 (1993) ........................................ 25

*Miller v. Alabama*, 567 U.S. 460 (2012) ........................................... 49, 50

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393 (6th Cir. 2022) ...................................................................................... 21

*Pepper v. United States*, 562 U.S. 476 (2011) ............................ 47, 54, 55

*Roper v. Simmons*, 543 U.S. 551 (2005)..................................................49

*Solem v. Helm*, 463 U.S. 277 (1983).......................................................42

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgt., LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387 (2018)..................................................21

*United States v. Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011) .........48

*United States v. Bass*, 17 F.4th 629 (6th Cir. 2021) ..........................52, 53

*United States v. Beamus*, 943 F.3d 789 (6th Cir. 2019) (per curiam) ....42

*United States v. Booker*, 543 U.S. 220 (2005) ........................................44

*United States v. Boudreau,* 564 F.3d 431 (6th Cir.2009) ........................31

*United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020) .................15, 22

*United States v. Brown*, 221 F.3d 1336 (6th Cir. 2000) (table) .............................................................. …………12, 13, 30, 33

*United States v. Chambers*, No. 21-1331, 2022 WL 612805 (6th Cir. Mar. 2, 2022) ..............................................................................27

*United States v. Coleman*, No. 01-506, Dkt. 659 (D.S.C. May 27, 2020). .............................................................................................52

*United States v. Curtis*, 66 F.4th 690 (7th Cir. 2023)................26, 29, 30

*United States v. Evans*, 314 F.3d 329 (8th Cir. 2002) ............................29

*United States v. Flowers*, 963 F.3d 492 (6th Cir. 2020)....................22, 42

*United States v. Ford,* 184 F.3d 566 (6th Cir.1999).................................36

*United States v. Fowler*, 749 F.3d 1010 (11th Cir. 2014) .......................28

*United States v. Gaines*, 888 F.2d 1122 (6th Cir. 1989) (per curiam)....33

*United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020)..........................25

*United States v. Guerrero*, 52 F. Supp. 3d 643 (S.D.N.Y. 2014).............46

*United States v. Halcomb*, 424 F. App'x 447 (6th Cir. 2011)............43, 54

*United States v. Hourani*, No. 95-80071 (E.D. Mich. Sept. 17, 2020) ....56

*United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020).................. passim

*United States v. Ismel*, No. 94-00008, 2022 WL 1203823 (D. Va. Apr. 22, 2022) .................................................................................................51

*United States v. Jackson,* 515 F. Supp. 3d 708 (E.D. Mich. 2021)...14, 36

*United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2903 (2022) .................................................................................26

*United States v. Mitchell*, 832 F. App'x 387 (6th Cir. 2020)...................25

*United States v. Noble*, 762 F.3d 509 (6th Cir. 2014) .......................31, 32

*United States v. Olano*, 507 U.S. 725 (1993) .........................................31

*United States v. Pembrook*, 79 F.4th 720 (6th Cir. 2023).......................39

*United States v. Presley*, 547 F.3d 625 (6th Cir. 2008)...........................59

*United States v. Smith*, Nos. 20-1833/21-1218 (6th Cir. Jan. 13, 2022),

cert. denied, No. 22-5470, 2022 WL 17408211 (U.S. Dec. 5, 2022) .....27

*United States v. Spencer*, 998 F.3d 843 (8th Cir. 2021)..........................23

*United States v. Sweet*, No. 21-1477, 2021 WL 5371402 (6th Cir. Nov. 18,

2021) ...................................................................................52, 54

*United States v. Taneja*, 20-00111, 2022 WL 2815163 (E.D. Tenn. Jul 18,

2022) ...................................................................................34

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc)...........32

*United States v. Walker*, No. 20-1555 (6th Cir. Apr. 20, 2021) .. 14, 27, 36

*United States v. Walls*, 546 F.3d 728 (6th Cir. 2008) .............................59

*United States v. Ware*, 964 F.3d 482 (6th Cir. 2020) .............................46

*United States v. Warren*, No. 95-00147, 2020 WL 3036011 (D. W. Va. June

5, 2020) ...................................................................................52

*United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)..................42, 55

*Williams v. New York*, 337 U.S. 241 (1949) ...........................................48

## Statutes

18 U.S.C. § 2 ...............................................................................3

18 U.S.C. § 3553(a)........................................................ passim

18 U.S.C. § 3582(c)(1)(A) ................................................57, 58

18 U.S.C. § 3583 ................................................................56

18 U.S.C. § 3584(c) ...........................................................28

18 U.S.C. § 3594 ...............................................................53

18 U.S.C. § 924(c) ..................................................... passim

21 U.S.C. § 841(a)(1)..........................................................15

21 U.S.C. § 846 ...............................................................8, 15

21 U.S.C. § 848(e)(1)(A)............................................. passim

First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018)

................................................................................ passim

## Other Authorities

Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts (2012) ................................................................24

Coleman Young, *Hard Stuff: The Autobiography of Mayor Coleman Young* (1994)......................................................................6

Deonna S. Turner, *Crack Epidemic* (Encyclopedia Britannica).....6, 7, 60

Gov't Br. in Opp., *Concepcion v. United States*, 597 U.S. 481 (2022) (No. 20-1650) ..............................................................27

Nico U.F. Dosenbach et al., *Prediction of individual brain maturity using fMRI*, Science (Sept. 10, 2010) ...........................................49

U.S. Bur. of Labor Statistics, *CPI Inflation Calculator* ...........................6

U.S.S.C., *Youthful Offenders in the Federal System* (May 2017)........... 49

## Rules

6th Cir. R. 34 (g)(1)...........................................................................1

Fed. R. App. P. 34 (a)(2)(C) ...........................................................1

Fed. R. Crim. P. 32 ...............................................................33, 34

## Guidelines

U.S.S.G. § 2A1.1 ...................................................... 11, 13, 52

U.S.S.G. § 3D1.2 ........................................................ 16, 34

U.S.S.G. § 5G1.2 ............................................................28

## REQUEST FOR ORAL ARGUMENT

Defendant-Appellee Gregory Brown respectfully requests oral argument because it will aid this Court in rendering its decision. *See* Fed. R. App. P. 34 (a)(2)(C). This appeal presents four issues, one of which is an issue of first impression in this Court: whether, and under what circumstances, district courts may reduce sentences imposed for covered and non-covered offenses under § 404 of the First Step Act of 2018. The second issue asks whether the government procedurally defaulted arguments concerning Brown's eligibility for relief under that Act. The third issue, which applies exclusively to Brown, clarifies that under Supreme Court precedent, no court can correct the claimed guidelines grouping error. The fourth issue involves the district court's application of the statutory sentencing factors. Although relatively straightforward, this issue is critically important to Brown, who is free after serving the equivalent of a 31-year sentence. Resolving each question will require fact-intensive inquiries based on circumstances unique to Brown—that is, circumstances inapplicable to the other appellees in this consolidated appeal. Oral argument should be granted because it will ensure a full and fair adjudication of the questions presented. *See* 6th Cir. R. 34 (g)(1).

## ISSUES PRESENTED

I.    Did the district court have authority to reduce Brown's concurrent life sentences imposed for a covered and a non-covered offense, particularly when those offenses grouped under the guidelines?

II.   Did the government waive or forfeit its opportunity to challenge Brown's eligibility for § 404 relief by failing to challenge the sentencing order grouping Brown's covered and non-covered offenses and by electing to not respond to Brown's arguments about the sentencing-package doctrine at any time before the § 404 resentencing hearing?

III.  Does this Court have authority to adjust the sentencing court's grouping of Brown's covered and non-covered offenses?

IV.   Did the district court abuse its discretion when it carefully weighed the statutory sentencing factors before reducing Brown's life sentence to the equivalent of a 31-year sentence?

## INTRODUCTION

Acting pursuant to the authority conferred upon it by § 404 of the First Step Act of 2018, the district court modified Gregory Brown's sentence, reducing his life sentence to the equivalent of a 31-year sentence. This was proper. The threshold eligibility requirement for a § 404 reduction is a conviction for a "covered offense." There is no dispute that Brown's drug conspiracy conviction qualifies. Brown was also convicted of and sentenced for two non-covered offenses: (1) aiding and abetting an intentional killing in furtherance of a continuing criminal enterprise ("CCE"), 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and (2) use of a firearm in furtherance of drug-trafficking or crime of violence, 18 U.S.C. § 924(c). Unlike his co-appellees' sentences, Brown's covered drug conspiracy and non-covered CCE conviction "grouped" under the federal sentencing guidelines. The § 924(c) did not.

The district court reduced Brown's life sentences for the grouped sentences but did not disturb the mandatory five-year consecutive sentence for the § 924(c). This was legally sound as a matter of statutory interpretation. Both the plain text of § 404 and the "sentencing-package

3

theory" advanced by the government with endorsement from the U.S. Department of Justice authorized the modification of Brown's sentence.

The government claims Brown's case does not satisfy the sentencing-package theory. In addition to being factually inaccurate, the government waived or forfeited its ability to challenge Brown's eligibility under that theory. And, even if this Court disagrees, Supreme Court precedent expressly prohibits courts in § 404 proceedings from altering the guidelines in any way other than to account for the retroactive application of the Fair Sentencing Act.

Finally, the district court did not abuse its discretion in resentencing Brown.

## STATEMENT OF THE CASE

### I.    Gregory Brown's Personal Background

Gregory Brown was born in Detroit in May 1972 to 18-year-old Edna Brown, still a child herself. (PSR ¶ 64.) Brown never met his dad, who "was shot to death at the age of 18 while [his] mother was pregnant." (*Id.*) As a child, Brown spent most of his time on Detroit's eastside with his mom and younger siblings, often living without electricity and hot water due to his mom's inability to pay the utility bills. For a time, Brown's family resided with his aunt, as his mother lost the family home. (R.2576, Def.'s Sent'g Mem., 20906.[1])

Brown lost the lottery of birth. His upbringing was tragically "dysfunctional." (*Id.* at 20907.) He was raised in poverty, without a male role model. And he grew up in the immediate aftermath of the 1967 rebellion, when Detroit went from "arsenal of democracy" to the titleholder for the nation's most dangerous city and the city with the highest (or close to it) rates of unemployment, poverty, and infant mortality per capita. (*Id.*)

Mayor Coleman Young reflected on the impact of the 1967 rebellion:

---

[1] Record cites list a PageID number unless cite is an appellate document.

> The heaviest casualty . . . was the city. Detroit's losses went a hell of a lot deeper than the immediate toll of lives and buildings. The riot put Detroit on the fast track to economic desolation, mugging the city and making off with incalculable value in jobs, earnings taxes, corporate taxes, retail dollars, sales taxes, mortgages, interest, property taxes, development dollars, investment dollars, tourism dollars, and plain damn money.

Coleman Young, *Hard Stuff: The Autobiography of Mayor Coleman Young*, p. 179 (1994).

By the time Brown joined the "Best Friends" in 1986 at age 14, Detroit was a genuinely fearsome place. Population decline spurred by the rebellion left the city littered with abandoned properties, many scarred by arson. Population decline also depleted the city's tax base, depriving it of funds to provide critical public services. (R.2576, Def.'s Sent'g Mem., 20906.) In 1986, Detroit was in the throes of the crack epidemic, an epidemic that lured impoverished youth with the promise of fast money. Small-time dealers who sold crack daily earned a median net income of $2,000 per month.[2] *See* Deonna S. Turner, *Crack Epidemic* (Encyclopedia Britannica), available at: www.britannica.com/topic/crack-

---

[2] Adjusting for inflation, $2,000 in December 1986 was worth $5,551.96 in December 2023. U.S. Bur. of Labor Statistics, *CPI Inflation Calculator* available at: https://www.bls.gov/data/inflation_calculator.htm (accessed Jan. 11, 2024).

epidemic (accessed Dec. 7, 2023) (citation omitted). High demand and high margins "caused intense competition between drug dealers as they fought to profit from the same customers." *Id.* Consequently, dealers used violence to "defend[] their economic boundaries," indelibly linking violence and crack together. *Id.*

Despite being only 14 in 1986, Brown had smoked marijuana for years. (PSR ¶ 10.) The responsibility of being the eldest of three with a single mom weighed heavily on him. He did whatever he could to prevent his little brother and baby sister from experiencing the same kind of deprivation he had, even if that meant selling drugs for the Best Friends. (R.2576, Def.'s Sent'g Mem., 20907.) At 14, Brown could not fully grasp the consequences of that decision. At 16, he was expelled from high school for non-attendance. (PSR ¶ 10.) By 18, he had been convicted of carrying a concealed weapon and possessing less than 25 grams of cocaine. (*Id.* ¶¶ 50, 53.)

## II.   Procedural History

### A.   Underlying Criminal Proceedings

In 1995, the government indicted Brown with 17 others. (R.882, 2d Sup. Indictment, 10277-92.) This indictment stemmed from a case

initiated in 1992 that grew into a multi-defendant prosecution against 44 people involved in a violent drug trafficking organization called the "Best Friends" headed by Terrence Brown (of no relation to Gregory Brown). (PSR ¶¶ 10, 18; R.1677, Trial Tr. Vol. XI, 11239.)

The second superseding indictment named Brown in three counts. Count 1 charged him (and others) with a drug trafficking conspiracy involving cocaine and crack cocaine, 21 U.S.C. § 846. (R.882, 2d Sup. Indictment, 10278-81.) Count 15 charged Brown and Edward Dale with intentional killing in furtherance of a continuing criminal enterprise ("CCE"), 21 U.S.C. § 848(e)(1)(A), and aiding and abetting, 18 U.S.C. § 2. (R.882, 2d Sup. Indictment, 10288-89.) Count 16 charged Brown and Dale with using or carrying the same firearm, 18 U.S.C. § 924(c). (R.882, 2d Sup. Indictment, 10289.)

Gregory Brown was among the youngest, if not the youngest, charged in the case. Terrence Brown ordered most of the murders committed by "Best Friends" members, including the 1993 murder of Walter Daniels, a rival gang member, who Gregory Brown was convicted of killing as an aider and abettor. (PSR ¶¶ 19, 28; R.2587, 12/22/21 Hr'g Tr., 21119.) Gregory Brown did not fire a single shot. (R.1680, Sent'g Hr'g

8

Tr., 11757-58; R.1677, Trial Tr. Vol. XI, 11297 (government stating in closing "the evidence is rather clear that the person . . . [who] shot and killed Walter Daniels was Edward Dale.").)

Of the 44 people indicted in the Best Friends case, many cooperated to avoid the death penalty or dying in federal prison. Eight went to trial and several opted to cooperate after the jury found them guilty. Brown, who was arrested in December of 1995 when the jury in the second Best Friends trial had already commenced deliberations, was tried alone. (*See United States v. Brown*, No. 92-81127, 12/1/1995 Dkt. Entry.) There was nobody left to cooperate against. After Brown's jury found him guilty, the district court sentenced him to life under the then-mandatory guidelines.

The other Best Friends members—that is, those who cooperated and, despite being more culpable given their leadership roles and repeated violent conduct—received shorter sentences and are now free. Stacey Culbert had his four life sentences, including two for separate murders, reduced to 27 years. He left prison in 2018 and has completed federal supervision.[3] (PSR at 4; R.1275, Culbert J., 8826; R.2469, Order

---

[3] Although Culbert pled to two murders, he committed 13. Among his victims were a 3-year-old toddler and Terrence Brown, the one-time leader of the Best Friends. (R.2587, 12/21/22 Hr'g Tr., 21103, 21112.)

on Early Termination, 19556-57 (terminating supervision after 16 months without government objection). Culbert picked up the contract to murder Daniels. (R.1677, Trial Tr. Vol. XI, PageID.11298.) Thomas Carr, also guilty of two counts of murder, had his sentence reduced to 180 months. Carr paid $20,000 to have Daniels killed. (R.1677, Trial Tr. Vol. XI, 11298.) Carr's supervision terminated early in 2010. (R.2100, Report & Order Terminating Supervised Release, 823.) Charles Wilkes, who testified about his involvement in 12 murders and acknowledged being a multi-kilogram drug dealer, received a 23.5-year sentence that was later reduced to 11.75 years. (R.1271, Wilkes Sent'g Mem., 9268 (describing Wilkes as a leader and "the most culpable of witnesses"); R.1273, Wilkes J., 9261; R.1714, Wilkes Am. J., 9255.) Finally, Lonnie O'Bryant, who was also involved with several homicides, (R.1726, O'Bryant Sent'g Mem., 10790, 10793), initially received a 29.5-year sentence, (R.1277, O'Bryant J., 10824), but ultimately served just 12.5 years, (R.1731, O'Bryant Am. J., 10781). Unlike these trigger-pullers who killed multiple people, Brown did not fire any shots at Daniels.

Despite his lesser culpability as compared to the codefendants mentioned above, as well as those in this consolidated appeal, the

sentencing court sentenced Brown to two concurrent life sentences under the mandatory guidelines regime—one for the drug conspiracy and the other for the CCE conviction—plus an additional five years as required by § 924(c). (R.1592, J., 16024.) It also imposed a five-year term of supervised release. (*Id.* at 16025.)

Neither life sentence was mandated by statute, only by the then-mandatory sentencing guidelines. The CCE statute provided (and continues to provide) for a penalty of 20 years to life. *See* 21 U.S.C. § 848(e)(1)(A). With respect to the concurrent life sentence for the drug conspiracy, the sentencing court uncritically adopted the PSR's finding that Brown was responsible for three kilograms of cocaine and at least 50 grams but less than 150 grams of crack. (R.1680, Sent'g Hr'g Tr., 11751-52; PSR ¶¶ 32, 37.) This drug quantity finding, which was not made by a jury acting on proof beyond a reasonable doubt in violation of the Sixth Amendment, coupled with the § 851 enhancement, made Brown's statutory punishment 20 years to life. (PSR ¶ 75.) Application of the first-degree murder cross-reference in U.S.S.G. § 2A1.1 made the base offense level for the drug conspiracy 43, which called for life

11

imprisonment under the then-mandatory guidelines. (R.1680, Sent'g Hr'g Tr., 11751-52; PSR ¶¶ 32, 37.)

Critically, the Probation Department found the drug conspiracy and CCE convictions "closely related" and grouped them together. (PSR ¶ 37.) During Brown's sentencing, the court acknowledged the drug conspiracy and CCE convictions grouped by assigning a single offense level to those counts and by stating that the § 924(c) was excluded "from the multiple count grouping rules." (R.1680, Sent'g Hr'g Tr., 11755.) In a "sentencing order," the district court "adopt[ed] the factual findings and guideline application in the presentence report." *United States v. Brown*, 221 F.3d 1336, *15 (6th Cir. 2000) (table) (alteration in original).

The government filed no objections to the PSR, did not object to the grouping at the sentencing hearing, and did not raise the issue during Brown's direct appeal. *See generally id.* This was despite the sentencing court's admonishment that

> if the government thinks that the Court is acting precipitously or not correctly, it should note that because it will be the Government's obligation to defend the Court's judgments on appeal. I expect Mr. Soisson or Mr. King to speak up if it (sic) thinks the Court is committing error.

(R.1680, Sent'g Hr'g Tr., 11752.)

This Court affirmed Brown's conviction and sentence on direct appeal. *Brown*, 221 F.3d 1336.

## B.    Section 404 Proceedings

In 2019, Brown moved for relief under § 404(b) of the First Step Act. (R.2360, Pro Se § 404 Mot., 17390-414.) The district court denied the motion in a form order after erroneously concluding Brown was ineligible because his "guideline range was calculated under § 2A1.1 (First Degree Murder/Intentional Killing)." (R.2386, 1st § 404(b) Order, 17663; R.2541, 7/20/22 Op. & Order, 20521.) Acting pro se, Brown timely sought reconsideration. (R.2391, Mot. for Reconsideration, 17726-35.) He filed a pro se supplemental brief in support of that motion, (R.2397, Def.'s 2d Pro Se Suppl. Br., 17764-94), and, later, counsel filed a supplemental brief on Brown's behalf, (R.2437, Counseled Suppl. Br., 19281-19302).

Brown invoked the sentencing-package doctrine in his pleadings. (R.2437, Counseled Suppl. Br., 19290 n.4 ("Mr. Brown invokes the sentencing-package doctrine to correct his entire sentence.") (citations omitted).) The government responded to that motion and chose not to address Brown's sentencing-package argument. (*See* R.2452, Gov't Opp. to Reconsideration Mot., 19431-41.)

13

Brown raised the sentencing-package doctrine again in his reply. (*See* R.2453, Def.'s Reply, 19446 ("[T]his Court has the authority under the sentencing package doctrine to reduce Brown's sentence not just on [Count I] but on the additional counts.") (citations omitted).) He also raised it, along with an argument that a reduction was appropriate because his drug conspiracy and CCE counts grouped, in two additional supplemental briefs. (*See* R.2461, 2d Suppl. Reply Br., 19509-10 (relying on *United States v. Jackson,* 515 F. Supp. 3d 708, 709, 713 (E.D. Mich. 2021) and *United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020)); R.2470, 3d Suppl. Reply Br., 19558-59 (citing government concession in *United States v. Walker*, No. 20-1555, R.29 at 2-3 (6th Cir. Apr. 20, 2021) (remand order), that courts have authority to reduce a sentence for a non-covered offense if a covered offense is also involved and the district court concludes they form a sentencing package).) The government again chose not to respond.

In July 2022, the district court found Brown eligible for § 404 relief and granted his reconsideration motion in part. (R.2541, 7/20/22 Op. & Order, 20528-40, 20542.) It found Brown eligible because he was convicted of a "covered offense," a drug conspiracy involving cocaine and

14

cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and was sentenced under § 841(b)(1)(A), the penalties of which were modified by the Fair Sentencing Act. (*Id.* at 20531 (citing *United States v. Boulding*, 960 F.3d 774, 778-81 (6th Cir. 2020)).) Instead of granting immediate relief as it could have, the district court requested "updated information" from the Probation Department "to determine the extent of the relief [Brown] should be afforded" at a future resentencing.[4] (*Id.* at 20538.)

The resentencing hearing took place in December 2022. Before that hearing, the government filed an omnibus memorandum contesting the district court's eligibility determination and asking the court to maintain Brown's life sentence. (*See* R.2568, Gov't Sent'g Modification Proceeding Mem., 20652-79.)

In this memorandum, the government argued for the first time that the sentencing-package doctrine did not apply to any of the defendants, including Brown. (*See id.* at 20664-65; App. Doc. 20, Gov't Br., 33.) It predicated this argument on the erroneous claim that Brown's offenses did not group at sentencing. (R.2568, Gov't Sent'g Modification

---

[4] Probation provided a memorandum to the district court before the resentencing. (R.2587, 12/21/22 Hr'g Tr., 21089.)

15

Proceeding Mem., 20664 ("[C]ourts are not authorized to reduce sentences for stand-alone non-covered offenses, like the homicide[] and § 924(c) offense[] here, none of which grouped with the drug conspiracy."); *id.* at 20658 (incorrectly claiming the "offenses did not group").) The government advanced this claim despite previously acknowledging that Brown's counts did, in fact, group. (R.2452, Gov't Opp. to Reconsideration Mot., 19434 ("[T]he drug conspiracy and the intentional killing, aiding and abetting, were closely related, they were grouped, § 3D1.2(b).").)

Brown also filed a memorandum before his resentencing. (R.2576, Def.'s Sent'g Mem., 20900-24.) In it, he pointed out that the government waived its eligibility arguments about the sentencing-package doctrine and the grouping of his convictions. (*Id.* at 20901-04.) Brown also presented myriad reasons specific to him and his offenses in support of his request for a time-served sentence. (*Id.* at 20906-22.)

At the December 2022 hearing, the parties presented at length and Brown addressed the court, expressing his heartfelt remorse. (R.2587, 12/21/22 Hr'g Tr., 21115-16.)

On the issue of waiver, the district court remarked:

> Mr. Brown specifically identified and raised the sentencing package issue . . . on three different occasions, and the government simply didn't respond.[5]
>
> This is pretty classic forfeiture and, frankly, I suppose, one might even imply a waiver, since the issue was raised, the government ignored the issue, and so the government had an opportunity to address that issue before the Court even ruled on it.

(R.2587, 12/21/22 Hr'g Tr., 21091.)

The district court then reviewed the statutory sentencing factors and concluded, based on the unique facts and circumstances of Brown and his case, that a sentence of time-served was sufficient, but not greater than necessary, to achieve the purposes of punishment. (*Id.* at 21117-21122; R.2582, Am. J., 21023.) At the time of the hearing, Brown had served just over 27 years in custody, which is a 31-year sentence when accounting for good time. (R.2576, Def.'s Sent'g Mem., 20913.) The district court maintained the five-year term of supervised release. (R.2587, 12/21/22 Hr'g Tr., 21122-23; R.2582, Am. J., 21024.)

The government did not seek to stay the release order. A few hours after the December 21, 2022 hearing, a U.S. Marshal removed Brown's

---

[5] Brown raised the sentencing-package doctrine four times. (*See* R.2437, Counseled Suppl. Br., 19290 n.4; R.2453, Def.'s Reply, 19446; R.2461, 2d Suppl. Reply Br., 19509-10; R.2470, 3d Suppl. Reply Br., 19558-59.)

handcuffs and shackles. He walked out of the courthouse with several family members—including two of his kids he had not seen since being sent to federal prison in 1997—a free man. Since that day, Brown has obtained employment, rented his very first apartment, met his grandchildren, and fully complied with the terms of his supervision.

## SUMMARY OF THE ARGUMENT

The district court did not commit legal error when it reduced Brown's life sentence. Section 404 of the First Step Act provides a mechanism to modify the sentences of those convicted of "covered offense[s]." The parties agree Brown's drug conspiracy conviction is a covered offense. Brown was also convicted of two non-covered offenses—the CCE and the § 924(c)—but these convictions do not limit his eligibility for relief.

The text of the First Step Act contains just two limitations on a district court's authority to grant relief once it determines a "covered offense" is involved, and neither limitation applies here. Congress did not limit the authority of district courts to modify sentences imposed for both covered and non-covered offenses, and this Court should not engraft extratextual categorical exclusions onto the statute.

Even if the Court adopts the government's position that § 404 relief is limited to covered offenses and non-covered offenses that are part of a sentencing package, there would be no impact on Mr. Brown's eligibility. Unlike his co-appellees' sentences, Brown's sentences for the covered drug conspiracy and the non-covered CCE offense grouped. And under

the Department of Justice supported sentencing-package theory for § 404 eligibility, grouping evidences the existence of a package. The district court did not err when it found Brown eligible for relief in the precise scenario contemplated by the government. In any event, the government waived or forfeited its challenges to the application of the sentencing-package doctrine in Brown's case. But, even if this Court disagrees with the procedural default issue, Supreme Court caselaw prevents any court from un-grouping Brown's covered and non-covered sentences.

Finally, the district court did not abuse its considerable sentencing discretion in reducing Brown's sentence. It analyzed the facts and circumstances of Brown's case with reference to the statutory sentencing factors and weighed those considerations properly. The government's disagreement with the outcome does not mean the modified sentence flowed from an abuse of discretion.

The district court did not commit legal error in finding Brown eligible for a sentence reduction under § 404. And the district court did not abuse its discretion when imposing Brown's modified sentence. Therefore, this Court should affirm.

## ARGUMENT

## I.    As a Matter of First Impression, Brown is Eligible for Relief under Section 404(b) of the First Step Act.

### A.    Standard of Review

This Court reviews questions of statutory interpretation and questions of law de novo. *Consumers' Rsch. v. Fed. Commc'ns Comm'n*, 67 F.4th 773, 783 (6th Cir. 2023) (citation omitted). Whether the facts of a particular case fall within a statutory definition is a mixed question of law and fact. *See New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 407 (6th Cir. 2022). For mixed questions, the Court follows a case-by-case analysis, and when the Court finds itself "immerse[d] . . . in case-specific factual issues," it reviews under the deferential clear-error standard. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgt., LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

### B.    Brown is eligible for relief under the plain terms of the First Step Act.

The First Step Act grants district courts discretion to reduce sentences for people convicted of "covered offense[s]." First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018). A "covered offense" is a federal crime (committed before August 3, 2010) for which

21

the statutory penalties were modified by the Fair Sentencing Act. *Id.* § 404(a). "[E]ligibility for resentencing under the First Step Act turns on the statute of conviction alone." *Boulding*, 960 F.3d at 781. If a covered offense is involved, it does not matter whether the guidelines are lower than at the time of conviction. *United States v. Flowers*, 963 F.3d 492, 497-98 (6th Cir. 2020).

The parties agree Brown is eligible for, but not automatically entitled to, a sentence reduction on his drug conspiracy conviction because that conviction is a "covered offense." (*See* App. Doc. 20, Gov't Br., 22.) Brown was also convicted of two non-covered offenses—the CCE and the § 924(c)—but these convictions do not preclude his eligibility for a sentence modification.

Congress established only two limitations on the relief available under § 404: Sentences previously reduced under the Fair Sentencing Act may not be reduced again, and people previously denied a Fair Sentencing Act reduction on the merits may not file a First Step Act motion. *See* First Step Act § 404(c). If Congress intended that § 404 not apply to those serving sentences for both covered and non-covered offenses, it could have easily included that language. It did not.

22

The statutory text did not limit the district court's discretion to reduce Brown's sentence for his non-covered offense. The First Step Act permits courts to "impose a reduced sentence" but does not limit "this relief to defendants who were sentenced only for a covered offense." *United States v. Spencer*, 998 F.3d 843, 845 n.1 (8th Cir. 2021) (quoting First Step Act § 404(b)). Nothing in the statute's "language . . . bar[s] a court from reducing a non-covered offense." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020). And "'[d]rawing meaning from silence is particularly inappropriate' in the sentencing context, 'for Congress has shown that it knows how to direct sentencing practices in express terms.'" *Concepcion v. United States*, 597 U.S. 481, 497 (2022) (quoting *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)). As such, district courts may reduce sentences imposed for covered and non-covered offenses just as they may deny relief to eligible defendants. *See* First Step Act § 404(c) (district courts are not "require[d] . . . to reduce any sentence").

Congress's decision not to impose additional limitations is consistent with the historical tradition of entrusting federal judges "with wide sentencing discretion." *Concepcion*, 597 U.S. at 490. In the First

Step Act, Congress entrusted district courts to reduce sentences involving covered offenses, trusting those same courts to deny relief when it is not appropriate.

This interpretation giving district courts discretion to reduce both covered and non-covered offenses is consistent with the canon that "the expression of one is to the exclusion of others" (*expressio unius est exclusio alterius*). *See* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 107 (2012). This canon applies when "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

Commonsense dictates that Congress considered the unnamed possibility—the reduction of non-covered offenses—because covered and non-covered offenses are opposite sides of the same coin. Each house of Congress has an office of legislative counsel that aids in the drafting of bills that may or may not become law. Certainly, these expert drafters understood that someone could be convicted of covered and non-covered offenses in a single trial, as multiple-count indictments are standard in drug conspiracy cases. Considering this, if Congress had intended to say

that courts could only "impose a reduced sentence *for a covered offense,*" then Congress would have done so. It did not, and courts "are not free to rewrite the statutory text." *McNeil v. United States*, 508 U.S. 106, 111 (1993); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead, we must give effect to the text Congress enacted."); *Hudson*, 967 F.3d at 610-11 (declining "to expand the limitations crafted by Congress") (quoting *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020)).[6]

In challenging the decision below, the government makes much of the district court's use of the phrase "plenary resentencing." (*See, e.g.,*

---

[6] *Gravatt*'s "covered offense" was a multi-object conspiracy involving both covered crack and non-covered powder cocaine. Several circuits agree that multi-drug conspiracy offenses involving crack and another controlled substance are "covered offenses" for which relief is available under § 404. *See, e.g.*, *United States v. Mitchell*, 832 F. App'x 387, 390 (6th Cir. 2020) (Stranch, J., concurring) ("[W]hen we do have occasion to read the hybrid conviction issue . . . I note that our sister circuits that have considered it have uniformly found defendants with hybrid convictions eligible for First Step Act Relief."). The government does not challenge the reduction for Brown's hybrid drug conspiracy. This provides additional support for the position that if a covered offense is involved, district courts may reduce the overall sentence. This is so even if the resulting guidelines calculation remains unchanged due to the quantity of the non-covered substance.

R.2587, 12/21/22 Hr'g Tr., 21088.) Functionally, however, the district court modified Brown's sentence based on a straightforward reading of § 404. That is, it rightly recognized that Brown was convicted of a "covered offense" and that "'excluding non-covered offenses from the ambit of First Step Act consideration would, in effect, impose an extra-textual limitation on the Act's applicability' because the statute did not constrain its application to grouped and noncovered offenses." *United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023) (quoting *Hudson*, 967 F.3d at 610).

Put differently, the district court referred to plenary resentencing because it had already found Brown (and his co-appellees) eligible for § 404 relief. This is consistent with *United States v. Maxwell*, which says district courts are not *required* to engage in plenary resentencing but implies that they can. *Id.*, 991 F.3d 685, 690 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2903 (2022). The government cherry picks the plenary language to challenge the district court but fails to appreciate the district court had already made the eligibility determination. No legal error occurred, so this Court should affirm.

26

### C.    Brown is eligible for relief under the government's sentencing-package theory.

Brown is also eligible for a sentence reduction under "the sentencing-package theory," which Brown relied on in his § 404 pleadings and has the endorsement of the U.S. Department of Justice.[7] (*See, e.g.*, R.2437, Counseled Suppl. Br., PageID.19290 n.4; App. Doc. 20, Gov't Br., 25.)

Under the "sentencing-package theory,"

a court is not limited under the text of the First Step Act to reducing a sentence solely for a covered offense. Instead, a defendant's conviction for a covered offense is a threshold

---

[7] The government has repeatedly endorsed the sentencing-package theory in this Court. *See United States v. Chambers*, No. 21-1331, 2022 WL 612805, at *7 (6th Cir. Mar. 2, 2022) (Clay, J., dissenting) (noting government concession that district courts have "the authority under the First Step Act to reduce a defendant's sentence for CCE convictions if they were previously grouped with a covered offense") (quoting concession in *United States v. Smith*, Nos. 20-1833/21-1218 (6th Cir. Jan. 13, 2022) (order)), *cert. denied*, No. 22-5470, 2022 WL 17408211 (U.S. Dec. 5, 2022)); *Walker*, No. 20-1555, App. Doc. 29 at 2-3 (government concession that courts have authority under § 404 to reduce sentences for non-covered offenses if a covered offense was also involved and the district court concludes they form a sentencing package). It has also advanced the theory in the Supreme Court. *See, e.g.*, Gov't Br. in Opp. 16, *Concepcion v. United States*, 597 U.S. 481 (2022) (No. 20-1650) ("Congress's use of the phrase 'impose a reduced sentence,' simply clarifies that the court is not limited to reducing 'the sentence' for the covered offense, but may also correspondingly reduce the overall sentence to the extent it embodies an intertwined sentencing package.") (internal citations and quotation omitted).

27

> requirement of *eligibility* for resentencing on an aggregate penalty. Once past that threshold, a court may consider a defendant's request for a reduced sentence, including for non-covered offenses that were grouped with covered offenses to produce the aggregate sentence.

*Hudson*, 967 F.3d at 611 (emphasis in original) (remanding case to allow district court to decide "whether [Hudson's] aggregate term of imprisonment," imposed for a covered offense grouped with a non-covered firearm offense, "should be reduced").

The sentencing-package theory of eligibility "comports with the manner in which sentences are imposed," where sentences are a package of several parts "treated under federal law as a single, aggregate term of imprisonment." *Id.* (citing 18 U.S.C. § 3584(c)); *see also United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) ("[S]entencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence."). This is especially true of grouped offenses, as the guidelines assign a single offense level to grouped counts. *See* U.S.S.G. § 5G1.2(b)-(d) (instructing courts imposing sentences for multiple counts to "determine the total punishment" and to "impose that total punishment on each such count," and further advising

28

courts to use consecutive and concurrent sentencing to formulate a sentence equal to the total punishment).

To determine whether multiple sentences form a package, "[t]he operative question is whether there is reason to think that, at the time of sentencing, the two sentences were interdependent." (App. Doc. 20, Gov't Br., 26 (quoting *Curtis*, 66 F.4th at 694).) "One way—perhaps the most common way—to show interdependence [is] to see if the counts were grouped for sentencing." *Curtis*, 66 F.4th at 694; *see also United States v. Evans*, 314 F.3d 329, 332 (8th Cir. 2002) ("Under the Guidelines, 'a multi-count [or grouped] sentence is a package.'"). The government concedes grouping evidences the requisite interdependence. (App. Doc. 20, Gov't Br., 26 (citing *Hudson*, 967 F.3d at 610-11).)

Brown's case fits squarely within this framework, thus making him eligible for § 404 relief under the sentencing-package theory. Brown's conviction for a covered drug conspiracy gets him past the "threshold requirement of *eligibility* for resentencing on an aggregate penalty." *Hudson*, 967 F.3d at 611 (emphasis in original). Having satisfied the threshold, the district court correctly considered Brown's "request for a reduced sentence, including for [his] non-covered offense[] that [] grouped

with [his] covered offense[] to produce [his] aggregate sentence." *Hudson*, 967 F.3d at 611.

The record establishes that Brown's covered drug conspiracy grouped with his non-covered CCE conviction for purposes of sentencing. (PSR ¶ 37); *Brown*, 221 F.3d at *15. Moreover, the fact that the sentencing court assigned a single offense level to the grouped counts evidences its intent "to issue one global sentence." *Curtis*, 44 F.4th at 694.

The district court did not commit legal error by reducing the aggregate penalty imposed for Brown's covered and non-covered offense. To the contrary, it acted well within its authority.

## II.   The Government Waived or Forfeited its Arguments about Brown's Eligibility under the Sentencing-Package Theory in Two Distinct Ways.

The government failed to raise certain arguments it advances on appeal in a timely manner below. First, the government did not object to the grouping of Brown's drug conspiracy conviction and CCE conviction at any point before the December 2022 resentencing. It did not even raise the issue in its sentencing modification proceeding memorandum, wherein it erroneously claimed Brown's offenses did not group. (R.2568, Gov't Sent'g Modification Proceeding Mem., 20658, 20664.) Second, the

government did not challenge Brown's eligibility for a reduction under the sentencing-package doctrine until five months after the district court found him eligible. This is so even though Brown repeatedly raised the doctrine in his pleadings. As a result, the government waived, or at least forfeited, its opportunity to raise these arguments in this Court.

## A.   Standard of Review

Waiver is "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks and citation omitted). "[W]aiver extinguishes the ability to challenge any error under Rule 52." *United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014).

Forfeiture "is the failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733. Whether a party has forfeited a right or argument is a "mixed question of law and fact." *Karam v. Sagemark Consulting, Inc.,* 383 F.3d 421, 426 (6th Cir.2004). This Court determines de novo whether the facts show a party forfeited an argument. *See United States v. Boudreau,* 564 F.3d 431, 435 (6th Cir. 2009).

"Just as criminal defendants can forfeit rights or arguments, so too can the government." *United States v. Lara*, 590 F. App'x 574, 586 (6th

Cir. 2014) (collecting cases). The government's arguments concerning Brown's eligibility should be reviewed for plain error if addressed at all. *See Noble*, 762 F.3d at 528.

Under plain-error review, the government must "show (1) error (2) that was obvious or clear, (3) that affected [its] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks and citation omitted). "Only in exceptional circumstances will we find such error—only, we have said, where the error was so plain that the trial judge was derelict in countenancing it." *Id.* (editorial marks omitted).

## B. The government waived or forfeited its opportunity to object to the 1997 decision grouping the covered and non-covered offenses.

Trying to escape the inevitable conclusion that Brown is eligible for relief under the sentencing-package theory, the government hangs its hat on what it characterizes as an erroneous grouping determination by the Probation Department in 1997. (App. Doc. 20, Gov't Br., 28.) Despite regularly extolling the virtues of finality, the government, without any

32

authority in hand, invites the Court to create a finality escape hatch so that it may prevail. The Court should decline.

The government contends the Probation Department erred in grouping Brown's covered and non-covered offenses but glosses over an important reality. That is, it never objected to the grouping determination at a time when the sentencing court could address it. The sentencing court adopted the PSR's guidelines applications and grouped the offenses at sentencing, evidenced by the original sentencing order. *See Brown*, 221 F.3d at *15. The sentencing court "accept[ed]" the "undisputed portion[s] of" Brown's "presentence report"—including the grouping—as findings of fact. Fed. R. Crim. P. 32(i)(3)(A).

Blaming probation may be expedient. But the problem with placing blame there is that probation officers assist district courts with their sentencing functions by making recommendations in the form of PSRs. *See United States v. Gaines*, 888 F.2d 1122, 1123 (6th Cir. 1989) (per curiam); Fed. R. Crim. Pro. 32(c)-(f). Ultimate sentencing decisions are, however, the province of judges. *Gaines*, 888 F.2d at 1124.

The government could have objected to probation's grouping determination. It elected not to. The government did not file a written

33

objection to the PSR's grouping finding within 14 days. *See* Fed. R. Crim. Pro. 32(f)(1). It did not object to the grouping during the sentencing hearing. It did not challenge the grouping determination during Brown's direct appeal. And it did not object to the grouping when opposing Brown's § 404 reconsideration motion. In fact, it did quite the opposite by conceding "the drug conspiracy and the intentional killing, aiding and abetting, were closely related," and grouped. (R.2452, Gov't Opp. to Reconsideration Mot., 19434 (citing U.S.S.G. § 3D1.2(b)).) The first time the government claimed error was at the December 2022 resentencing, *after* previously acknowledging that the counts grouped, *after* the district court found Brown eligible, and *after* it filed its omnibus resentencing proceeding memorandum. (R.2587, 12/21/22 Hr'g Tr., 21117.)

The government's objection came far too late. Decades have passed since Brown's sentence became final, and the law contains no pathway to revise a final PSR. *See, e.g.*, *United States v. Taneja*, 20-00111, 2022 WL 2815163, at *1 (E.D. Tenn. Jul 18, 2022) (rejecting defendant's postmortem request to supplement a PSR post-judgment and collecting cases standing for proposition that there is no procedure allowing for the revision of a final PSR).

34

### C.    The government waived, or at least forfeited, its eleventh-hour protestations concerning Brown's § 404 eligibility under the sentencing-package doctrine.

The government also waived or forfeited its opportunity to contest the applicability of the sentencing-package theory in Brown's case.

At the December 2022 resentencing, the district court remarked that because Brown had raised this issue multiple times and the government declined to respond, the situation presented "pretty classic forfeiture and, frankly . . . one might even imply a waiver, since the issue was raised, the government ignored the issue, and so the government had an opportunity to address that issue before the Court even ruled on it." (R.2587, 12/21/22 Hr'g Tr., 21091.)

The facts here support a finding of waiver. Brown relied on the sentencing-package theory in his § 404 pleadings. (R.2437, Counseled Suppl. Br., PageID.19290 n.4 ("Mr. Brown invokes the sentencing package doctrine to correct his entire sentence.") (citations omitted).) The government responded to Brown's counseled reconsideration motion and chose not to address the argument. (*See* R.2452, Gov't Opp. to Reconsideration Mot., 19431-41.)

35

Brown raised the sentencing-package doctrine again in his reply. (*See* R.2453, Def.'s Reply, 19446 ("[T]his Court has the authority under the sentencing package doctrine to reduce Mr. Brown's sentence not just on [Count I] but on the additional counts.") (citations omitted).) He also raised it, along with an argument about a reduction being appropriate because his drug conspiracy and CCE convictions grouped for sentencing, in two additional supplemental briefs. (*See* R.2461, 2d Suppl. Reply Br., PageID.19509-10 (relying on *Jackson,* 515 F. Supp. 3d at 709, 713 and *Hudson*, 967 F.3d 605); R.2470, 3d Suppl. Reply Br., 19558-59 (noting government concession in *Walker*, No. 20-1555, App. Doc. 29 at 2-3, discussed on page 14, *supra*).) Yet again, the government chose not to respond. This choice not to respond constitutes waiver. *Cf. United States v. Ford,* 184 F.3d 566, 578 n.3 (6th Cir.1999) ("Even appellees waive arguments by failing to brief them.").

Despite ample opportunity, the government did not so much as mention the sentencing-package doctrine until nearly five months *after* the district court found Brown eligible for § 404 relief. (*See* R.2568, Gov't Sent'g Modification Proceeding Mem., 20664-65.) And, when it finally did, it erroneously claimed Brown's non-covered CCE conviction did not

group with his covered drug conspiracy. (*Id.* at 20664 ("[C]ourts are not authorized to reduce sentences for stand-alone non-covered offenses, like the homicide[] and § 924(c) offense[] here, none of which grouped with the drug conspiracy."); *see also id.* at 20658 (inaccurately claiming that Brown's "offenses did not group").) Oddly, it made this claim after acknowledging the counts grouped. (R.2452, Gov't Opp. to Reconsideration Mot., 19434.)

The government tries to frame its sentencing-package argument as a sentencing objection that could be raised at Brown's resentencing. (App. Doc. 20, Gov't Br., 33.) Not so. This argument relates to Brown's § 404 eligibility, which the district court had already decided.

This Court should conclude that the government waived, or at least forfeited, its eligibility arguments as to Brown.

## III. *Concepcion* Prohibits Courts in § 404 Proceedings from Revisiting Almost All Guidelines Determinations, Including Those involving Grouping.

The government's failure to object to the grouping at the original sentencing results in an additional procedural problem with its appellate arguments—one that is unique to Brown because he is the only appellee whose offenses "grouped." Even if this Court disagrees with Brown's

assessment of the procedural default issues raised in Section II, *supra*, Brown's § 404 resentencing is not analogous to a resentencing following a general remand. It is a different type of proceeding altogether. Unlike in resentencing proceedings following general remands, Supreme Court precedent explicitly prohibits courts in § 404 proceedings from adjusting the guidelines in any way other than "to reflect the retroactive application of the Fair Sentencing Act." *Concepcion*, 597 U.S. at 498 n.6. This means that even if the grouping of Brown's sentences in 1997 was improper, there is no mechanism or authority to correct it in this appeal.

### A.    Standard of Review

This Court reviews questions of law de novo. *See Consumers' Rsch.*, 67 F.4th at 783. The question of whether courts in § 404 proceedings may revise guidelines determinations in any way other than to account for retroactive application of the Fair Sentencing Act is a legal question. However, the question is settled. *See Concepcion*, 597 U.S. at 498 n.6.

### B.    Supreme Court precedent prevents this Court from revisiting the grouping of Brown's covered and non-covered offenses.

As with its eligibility argument (i.e., the applicability of the sentencing-package doctrine in Brown's case), the government couches

its argument about the grouping of Brown's offenses as a sentencing objection that could be raised anew during Brown's resentencing. (App. Doc. 20, Gov't Br., 33.) Do not be misled. This argument is not a sentencing objection due to the specific procedural posture of Brown's case. This appeal does not involve a resentencing following a general remand. Rather, it is a § 404 appeal. This means the government's grouping argument is really one about eligibility.

The distinction between a resentencing following a general remand and a § 404 resentencing matters. In fact, it is critical. In cases involving "a general remand for a de novo resentencing," parties may "raise new issues at resentencing, even issues that were previously waived or forfeited." *United States v. Pembrook*, 79 F.4th 720, 729 (6th Cir. 2023).

The same is *not* true in § 404 resentencing proceedings. In § 404 proceedings, courts must recalculate the guidelines to reflect the retroactive application of the Fair Sentencing Act, "but the guidelines should not be adjusted in *any* other way." *Concepcion*, 597 U.S. at 498 n.6 (emphasis added). Simply put, *Concepcion* forecloses the government's attempt to challenge the sentencing court's grouping determination.

39

The court below recognized the limits of its authority with respect to altering Brown's guidelines. And, importantly, it did so even-handedly, as both Brown and the government raised guidelines challenges during Brown's resentencing.

Brown argued his guidelines range should be lower than life because the first-degree murder finding was made by the judge, not the jury, in violation of *Alleyne v. United States*, 570 U.S. 99, 103 (2013) ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."). (R.2576, Def.'s Sent'g Mem., 20904-05 (observing that second-degree murder can also be "intentional")). At the resentencing, the district court took note of Brown's "issue with applying the guideline range that Judge Cohn applied at the original sentencing." (R.2587, 12/21/22 Hr'g Tr., 21089.) But, consistent with *Concepcion*, the court did not adjust Brown's guidelines to account for the *Alleyne* error.

The district court treated the government's grouping (guidelines) challenge—raised for the first time at the resentencing hearing in the most cursory way—that Brown's covered and non-covered offenses should not have grouped similarly. (R.2587, 12/21/22 Hr'g Tr., 21117.) It was not required to engage in a lengthy discussion of a frivolous position

40

or unbundle the grouped sentences in contravention of Supreme Court law.

It was not legal error for the district court to adhere to *Concepcion*'s command forbidding courts in § 404 proceedings from adjusting the guidelines in any way other than to account for the Fair Sentencing Act's changes. For this reason, the Court need not address the government's contention that the grouping determination was wrong at the time of Brown's sentencing and remains wrong today. This argument is foreclosed by *Concepcion* and cannot, therefore, constitute plain error.

## IV.    The District Court Did Not Abuse its Discretion by Reducing Brown's Sentence to the Equivalent of 31 Years.

The district court thoroughly reviewed the 18 U.S.C. § 3553(a) factors and did not abuse its considerable discretion when it reduced Brown's life sentence below the advisory guidelines range of life. The government's disagreement with the outcome does not transform the district court's sound professional judgment into an abuse of discretion through some form of legal alchemy.

### A.    Standard of Review

In § 404 cases, district courts "must consider the factors outlined in 18 U.S.C. § 3553(a), including the defendant's amended guidelines

range." *Flowers*, 963 F.3d at 498. Courts must also consider intervening

changes of law and fact when raised by a party. *See Concepcion*, 597 U.S.

at 500. Sentences imposed in sentence-modification proceedings must be

"sufficient but not greater than necessary to achieve the purposes of

sentencing." *Flowers*, 963 F.3d at 498.

This Court reviews challenges to the procedural or substantive

reasonableness of modified sentences for an abuse of discretion. *See*

*United States v. Williams*, 972 F.3d 815, 816 (6th Cir. 2020) (citing *United*

*States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019) (per curiam)). Just

last year, the Supreme Court elaborated upon the standard of appellate

review in § 404 cases:

> The broad discretion that the First Step Act affords to district
> courts also counsels in favor of deferential appellate review.
> As a general matter, "it is not the role of an appellate court to
> substitute its judgment for that of the sentencing court as to
> the appropriateness of a particular sentence." *Solem v. Helm*,
> 463 U.S. 277, 290, n.16 (1983). Section 404(c) of the First Step
> Act confers particular discretion, clarifying that the Act does
> not "require a court to reduce any sentence." Other than legal
> errors in recalculating the Guidelines to account for the Fair
> Sentencing Act's changes, see *Gall v. United States*, 552 U.S.
> 38, 51 (2007), appellate review should not be overly searching.

*Concepcion*, 597 U.S. at 501. *Cf. Gall*, U.S. 552 at 52 n.7 (citing statistics

highlighting district courts' expertise in federal sentencing); *United*

42

*States v. Halcomb*, 424 F. App'x 447, 449 (6th Cir. 2011) (district courts have "special competence" and "institutional advantage[s]" in matters of sentencing) (citations omitted).

>   **B.    The district court correctly identified the applicable penalties, including the recalculated guidelines range, and acknowledged the relevance of intervening changes in sentencing law.**

The district court recognized Brown's guidelines remained life. (R.2587, 12/21/22 Hr'g Tr., 21117; *see also* 7/20/22 Op. & Order, 20534.) Nevertheless, the government claims the district court abused its discretion because "the sentencing judge reasonably expected the defendants would spend the rest of their lives in prison[.]" (App. Doc. 20, Gov't Br., 42.) Sadly, the sentencing judge passed away in February 2022 at the age of 97. It is a fact of life that everyone will die. That does not mean everything a person did during their lifetime should remain cast in stone. Yet this is what the government repeatedly insinuates when it refers to the alleged errors of "the newly assigned judge," a respected and experienced jurist who recently took senior status. (*Id.* at 2, 3, 10, 38, 42, 47-48.) The argument that the district court abused its discretion based on the original sentencing judge's expectations *might* be persuasive if

43

that judge expressed an opinion on the desirability of sending Brown to prison for life. But he made no such statement.

The sentencing court had no choice but to impose life because Brown's sentencing occurred before *United States v. Booker*, 543 U.S. 220 (2005), which rendered the guidelines advisory. (R.2587, 12/21/22 Hr'g Tr., 21118.) What the sentencing court "expected" of a life sentence it had to impose under the mandatory guidelines says nothing of the sentence it would have imposed had it been authorized to vary below the guidelines.

The government's expectation argument overlooks the fact that the sentencing court had no occasion to consider individualized arguments in mitigation of a life sentence. Indeed, none were even vigorously presented because the mandatory guidelines dictated the result. *Booker*'s non-retroactivity meant Brown never had a constitutional sentencing hearing. It was not an abuse of discretion for the district court to consider the monumental change brought about by *Booker* in formulating Brown's modified sentence. *Concepcion*, 597 U.S. at 487.

The guidelines range was but one factor of many that the district court had to consider in resentencing Brown. *See* 18 U.S.C. § 3553(a)(4).

44

The district court permissibly considered the statutory penalties as well. *Id.* § 3553(a)(3). Brown's mandatory minimum aggregate penalty was 25 years: 20 years for the CCE conviction, *see* 21 U.S.C. § 848(e)(1)(A), plus a mandatory five-year consecutive sentence for the § 924(c).

Brown no longer faced a 20-year mandatory minimum on the drug conspiracy for two reasons. First, Brown's jury made no drug quantity findings because his trial occurred before *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Instead, the sentencing court found these facts based on the PSR. The government claims the *Apprendi* violation is of no moment, falsely representing that the "record [] shows the drug quantities for each defendant [] exceed 5 kilograms of cocaine or 280 grams of crack, as needed today to trigger the statutory penalty of life." (App. Doc. 20, Gov't Br., 40-41 (citing PSR ¶ 31).) The PSR attributed 3 kilograms of cocaine and at least 50 but less than 150 grams of crack to Brown, and the sentencing court adopted this finding. (PSR ¶ 32; R.1680, Sent'g Hr'g Tr., 11751-52.) Second, Brown no longer qualified for a § 851 enhancement. (R.2451, 7/20/22 Op. & Order, at 20534.)

According to the government, "[t]he district court did not rely on *Apprendi* at the December hearings, apparently agreeing with the

45

government that *Apprendi* would not have changed the statutory ranges for the offenses here." (App. Doc. 20, Gov't Br., 41.) But the district court discussed *Apprendi* and its impact on Brown's statutory penalties in its written opinion. (*See* R.2541, 7/20/22 Op. & Order, 20532-34 ("The defendants are correct that, under current law, they could be lawfully sentenced only under subparagraph (C) of section 841(b)(1), which applies when specific drug quantities are not alleged or a jury does not make a finding regarding specific drug amounts." (citing, inter alia, *United States v. Ware*, 964 F.3d 482, 488 (6th Cir. 2020))).) This was proper, as *Ware* authorizes district courts to consider *Apprendi* violations in § 404 proceedings. 964 F.3d at 488-89.

The government similarly claims Brown's jury made the findings necessary to support the life sentence for the CCE conviction. (App. Doc. 20, Gov't Br., 41.) Brown disagrees. The first-degree murder finding was made by the judge, not the jury, in violation of *Alleyne*, 570 U.S. at 103 ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."). Brown's jury found an "intentional" killing, but second-degree murder can also be intentional. *See United States v. Guerrero*, 52 F. Supp. 3d 643, 652 (S.D.N.Y. 2014) (following the

46

Fair Sentencing Act, the second-degree, rather than first-degree, murder guideline should be applied to CCE murder convictions under § 848(e)).

This Court should not perpetuate the constitutional errors by relying on facts never found by the jury to increase Brown's statutory minima or by concluding the district court abused its discretion when evaluating the penalties applicable to Brown.

## C.    The district court's discussion of the § 3553(a) factors supported a downward variance from the advisory guidelines range of life.

In resentencing Brown, the district court did exactly what Congress mandated and what the Supreme Court has endorsed time and time again: it considered who Brown was—both at the time of his offenses and at the time of his resentencing—and Brown's role in those offenses. 18 U.S.C. § 3553(a)(1); *Koons v. United States*, 518 U.S. 81, 113 (1996) (explaining that sentencings are unique studies "in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue"); *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (mentioning longstanding "principle that 'the punishment should fit the offender and not merely the crime'") (quoting *Williams v. New York*, 337

47

U.S. 241, 247 (1949)); *Concepcion*, 597 U.S. at 492-93 (holding that judges may consider post-sentencing rehabilitation in § 404 proceedings).

The district court's sentencing explanation touched upon Brown's tumultuous upbringing and youth at the time of the offenses. (R.2587, 12/21/22 Hr'g Tr., 21118-19.) These considerations were not offered to diminish the seriousness of Brown's offenses. (*Contra* App. Doc. 20, Gov't Br., 42-43.) Rather, they provided context for how Brown got involved with the Best Friends and helped explain his misguided choices.

Courts often recognize troubled upbringings as a basis for leniency. *See, e.g.*, *United States v. Bannister*, 786 F. Supp. 2d 617, 672, 688-89 (E.D.N.Y. 2011) (varying downward due to the defendants' "dysfunctional homes characterized by a combination of poverty, unemployment, undereducation, crime, addiction to drugs and alcohol, physical and emotional abuse, and the absence of an adult male role model," reasoning that these circumstances related to their culpability because resourced parents would have served as useful role models and steered their children toward educational and vocational opportunities).

Moreover, since Brown's 1997 sentencing, the Supreme Court has unequivocally stated that "youth matters in sentencing." *Jones v.*

*Mississippi*, 593 U.S. --, 141 S. Ct. 1307, 1314 (2021); *see also Miller v. Alabama*, 567 U.S. 460 (2012) (discussing five "hallmark features" of youth). This pronouncement resulted from a voluminous body of neuroscience research "recogni[zing] that people may not gain full reasoning skills and abilities until they reach age 25 on average." U.S.S.C., *Youthful Offenders in the Federal System*, at 5 (May 2017), available at: https://perma.cc/MZB2-UFZ6; *see also* Nico U.F. Dosenbach et al., *Prediction of individual brain maturity using fMRI*, Science (Sept. 10, 2010), available at: https://pubmed.ncbi.nlm.nih.gov/20829489/ (longitudinal study tracking brain development in 5,000 children and finding children's brains did not reach full maturity until *at least* age 25).

Brown was 14 when he joined the Best Friends, 20 at the time of Daniels's death, and 23 upon arrest. (R.2587, 12/21/22 Hr'g Tr., 21119.) Though a legal adult, Brown was still youthful, and his brain had not yet fully matured. Even the Supreme Court acknowledges "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper v. Simmons*, 543 U.S. 551, 574 (2005).

Brown's youth at the time of his offenses relates to all the § 3553(a) factors. (R.2576, Def.'s Sent'g Mem., 20910-12.) The "distinctive

49

attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 567 U.S. at 472. Retribution has to do with blameworthiness, and young people are less culpable than adults. *Id.* Deterrence carries less weight, too, because the "immaturity, recklessness, and impetuosity" of young people "make them less likely to consider potential punishment." *Id.* Incapacitation also does not necessarily justify a life sentence for young people because "[d]eciding that a juvenile offender forever will be a danger to society would require making a judgment that he is incorrigible—but incorrigibility is inconsistent with youth." *Id.* at 472-73.

The district court's discussion of Brown's youth shows it "considered the parties' arguments" and complied with its "standard obligation to explain [its] decision." *Concepcion*, 597 U.S. at 501. It did not need to conduct a deeper dive or cite scientific literature to avoid having this Court characterize its decision as an abuse of discretion. *Id.* (district courts are not "required to articulate anything more than a brief statement of reasons").

Addressing the seriousness of Brown's offenses, the district court stated: "The label, murder, particularly premeditated murder, is one of the offenses, perhaps the most serious offense known to the law." (R.2587, 12/21/22 Hr'g Tr., 21118.) Despite the unambiguous description of the offense as serious, the government contends the district's court recitation of certain facts—that the victim was "a rival drug dealer" and that Brown "was not the shooter"—shows it failed to give appropriate weight to the seriousness of Brown's offenses. (App. Doc. 20, Gov't Br., 42 (quotations omitted).) Not so. These comments accurately describe the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Indeed, the prosecutor made the same observation about Brown not being the shooter during closing argument. (R.1677, Trial Tr. Vol. XI, 11297 ("[T]he evidence is rather clear that the person . . . [who] shot and killed Walter Daniels was Edward Dale.").)

The record supplies additional evidence that the district court did not downplay the seriousness of Brown's offenses. Throughout the country, district courts routinely impose non-life sentences for murder.[8]

---

[8] District courts have also granted § 404 reductions to incarcerated people serving sentences imposed for homicide offenses. *See, e.g.*, *United States v. Ismel*, No. 94-00008, 2022 WL 1203823 (D. Va. Apr. 22, 2022) (granting

51

In cases involving application of the first-degree murder guideline, U.S.S.G. § 2A1.1, judges departed downward in 8% of cases (excluding departures under § 5K1.1 and § 5K3.1) and varied in 30% of cases. (*See* R.2576-11, U.S.S.C. Table, 20979-80.) In fiscal year 2020, the median sentence for murder was 19 years. The mean sentence was 21.25 years. (*See* R.2576-12, U.S.S.C. Table 2, 20981-82.) These statistics, cited by the district court, show that life sentences are not always appropriate when someone is convicted of murder. (R.2541, 77/20/22 Op. & Order, 20537.) They also show that reducing Brown's sentence below life did not produce disparity insofar as he was incarcerated for many years beyond both the median and mean sentences. 18 U.S.C. § 3553(a)(6).

A final note on the seriousness of the offense: The government's insinuation that Brown is similarly situated to the defendants in *United States v. Bass* and *United States v. Sweet* is wrong. (App. Doc. 20, Gov't Br., 39, 43, 49.) In *Bass*, the defendant "*operated* an interstate drug

---

§ 404 motion for man charged with murder); *United States v. Warren*, No. 95-00147, 2020 WL 3036011 (D. W. Va. June 5, 2020) (reducing sentence under § 404 where defendant was sentenced to life due to application of the murder cross-reference); *United States v. Coleman*, No. 01-506, Dkt. 659 (D.S.C. May 27, 2020) (granting § 404 motion for a man convicted of participating in a homicide).

conspiracy" and "personally carried out [acts of] violence and torture, in one instance shooting a subordinate, dousing him in alcohol, setting him on fire, and then torturing him with a hot iron, all while saying '[l]et's see what burning flesh smells like.'" *Id.*, 17 F.4th 629, 639 (6th Cir. 2021) (emphasis added; second alteration in original). He had his brother murdered and enlisted five siblings in his criminal enterprise. *Id.* at 640.

Bass was not a youthful offender and his "crimes were so severe that the Government sought the death penalty[.]" *Id.* When his attorney addressed the jury, which decided Bass's sentence, she argued "that there was no need to execute Bass because he would spend the rest of his life in prison if not given the death penalty." *Id.* at 634. When the district court imposed the life sentence chosen by the jury, it sentenced Bass to life imprisonment without the possibility of release under 18 U.S.C. § 3594. *Id.* at 638.

Unlike Bass, Brown was a youthful offender and had no leadership role in the Best Friends. He did not recruit his siblings. He did not torture anyone. The government did not seek to execute Brown. And the sentencing court did not impose life without the possibility of release.

53

(*See* R.1592, J., 16025 (imposing a five-year term of supervision upon Brown's release from prison).)

*Sweet* is similarly distinguishable. *United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *1-*2 (6th Cir. Nov. 18, 2021). Sweet was not a youthful offender when he "murdered his first wife, recorded the repeated rapes of his developmentally disabled neighbor, and may have played a role in his second wife's disappearance." *Id.* at *3. In addition to a state murder conviction, Sweet incurred multiple federal convictions for sexual exploitation of children. *Id.* at *2. His case stands in stark contrast to Brown's.

The district court properly considered and weighed the evidence of Brown's substantial post-sentencing rehabilitation. *See Pepper*, 562 U.S. at 491 ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing" and "may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary[.]'"); *Halcomb*, 424 F. App'x at 449 ("Supreme Court authority emphasizes the importance of encouraging and rewarding rehabilitation, with the

important goal of restoring offenders to complete freedom and useful citizenship.") (citing *Pepper*).

The government omits discussion of almost all the evidence Brown offered to demonstrate his rehabilitation, selectively addressing only his disciplinary record. (App. Doc. 20, Gov't Br., 42.) To be sure, Brown's record was not unblemished. But he received no citations between 2007 and the end of 2022. (R.2587, 12/21/22 Hr'g Tr., 21119.) *See also Concepcion*, 597 U.S. at 499 (courts deciding § 404 motions routinely "look[] to postsentencing evidence of violence or prison infractions as probative"); *Williams*, 972 F.3d at 817 (remanding First Step Act appeal where district court did not consider evidence of defendant's post-sentencing rehabilitation).

In addition to 15 years without disciplinary infractions, Brown meaningfully participated in prison programming and made significant strides in furthering his education despite lacking incentive as he stared down a life sentence. He earned his GED and paralegal certificate, enrolled in college courses, and worked in the law library. (R.2541, 7/20/22 Op. & Order, 20537; R.2587, 12/21/22 Hr'g Tr., 21119-20.) Brown also submitted "letters from BOP staff attesting to his rehabilitation;

extolling his mentorship, professionalism, positive outlook, and peaceful nature; and certifying his preparedness to work in and contribute to the civilian world." (R.2541, 7/20/22 Op. & Order, 20537.)

Next, the government claims the district court failed to "account for the public's interest in having cold-blooded killers serve out their life sentences[.]" (App. Doc. 20, Gov't Br., 46.) This is not a § 3553(a) factor. And it begs the question why the government failed to vindicate the public's interest after a district court released a man serving life for conspiring to murder a federal witness and aiding and abetting murder with the intent to prevent that person from communicating with law enforcement or attending and testifying at an official proceeding. *See United States v. Hourani*, No. 95-80071, R.214, Ruling Tr., 608-51 (E.D. Mich. Sept. 17, 2020). In addition to not appealing Hourani's release, the government did not object to the early termination of his supervision even though he had not yet completed a year of supervision. *See* 18 U.S.C. § 3583(e)(1).

Putting that aside, the government paints with a broad brush and lumps the appellees together, as if there are no differences between them and the crimes they were convicted of. It repeatedly refers to seven

murders to cast each appellee in the harshest light. (*See* App. Doc. 20, Gov't Br., 19, 20, 47.) This is not how federal sentencing works. *See Concepcion*, 597 U.S. at 486 ("There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her 'as an individual.'") (quoting *Koons*, 518 U.S. at 113). People are held accountable for *their* actions. *See* 18 U.S.C. § 3553(a)(1). Brown was convicted of aiding and abetting the murder of Daniels, so he is not "culpabl[e] for murdering at least seven people in cold blood." (App. Doc. 20, Gov't Br., 47.)

Continuing its efforts to hold Brown accountable for the actions of his co-appellees, the government discusses an order denying Dale's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) as if it applies to Brown. (App. Doc. 20, Gov't Br., 46 ("[T]he district court did not account for the public's interest in having cold-blooded killers serve out their life sentences, another sudden reversal from what it said less than a year earlier.") (citing R.2514, Order Denying Compassionate Release, 18997).) Brown is not Dale. Brown was convicted of aiding and abetting murder whereas Dale was held responsible for killing three

57

people. The district court's observation that Dale's life sentence was "not greater than necessary" says nothing about whether the same is true of Brown's life sentence. Although the district court denied Brown's § 3582(c)(1)(A) motion, it never addressed the § 3553(a) factors as they pertained to him. (*See* R.2541, 7/20/22 Op. & Order, 20540 (declining to review the § 3553(a) factors because Brown did not establish extraordinary and compelling reasons).)

The government claims Brown's modified sentence resulted from an abuse of discretion because he is "being released far earlier than" Daniels's family was "promised." (App. Doc. 20, Gov't Br., 46.) During Brown's resentencing, however, the district court and government noted the absence of information tending to show that anyone in Daniels's family exercised their rights as victims in the underlying criminal proceedings. (R.2587, 12/21/22 Hr'g Tr., 21101.) To its credit, the government followed the victims' rights protocols and tried to locate victims before the § 404 resentencing. It found none. (*Id.*) This Court cannot draw inferences about the victims' position from silence, especially considering the lengthy sentence Brown served and the various changes in Brown's circumstances.

No abuse of discretion occurred when the district court discussed the culpability of Stacey Culbert, another Best Friend. Culbert pled guilty to several crimes, including two murders, and received a 27-year sentence after cooperating. He was never held accountable for killing 11 other people, including a 3-year-old toddler and Terrence Brown, the Best Friends' one-time leader. (R.2587, 12/21/22 Hr'g Tr., 21103, 21112.)

Culbert's culpability related to the § 3553(a) factors in several ways. First, "judges are permitted, but not required, under binding Sixth Circuit precedent, to consider sentence disparities with respect to codefendants." *United States v. Walls*, 546 F.3d 728, 737 (6th Cir. 2008); *see also United States v. Presley*, 547 F.3d 625, 632 (6th Cir. 2008). Additionally, Culbert's culpability informed the district court's analysis on the need to provide adequate deterrence and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). The district court acknowledged Culbert's cooperation, which distinguished him and Brown. (R.2587, 12/21/22 Hr'g Tr., 21122.) But it also observed that Culbert's 27-year sentence raised questions about "the government's position that a life sentence is necessary to protect the public and afford adequate deterrence when it

was not necessary in order to achieve those goals for an individual whose conduct was much more serious and much more grave." (*Id.*)

Finally, the government claims an abuse of discretion because "the district court gave [Brown] a substantial windfall—unavailable to other murderers—merely because [his] drug conspiracy happened to involved crack." (App. Doc. 20, Gov't Br., 50.) This argument ignores the reality that violence and crack were inextricably woven together in the Best Friends prosecution. *See* Turner, *Crack Epidemic*, *supra*. More generally, it ignores the interplay between drugs and violence during the crack epidemic that plagued Detroit and the impact of these tragic circumstances on the lives of impoverished young men whose families were unable to flee to the suburbs when the perfect storm arrived.

Moreover, and notably, "disparities are always unavoidable when some, but not all, defendants are permitted to move for modifications of an original sentence." *Concepcion*, 597 U.S. at 500, n.8. Indeed, some disparity is a feature of this nation's sentencing law. *Id.*

The district court did not abuse its discretion in considering all the statutory sentencing factors before concluding that the equivalent of a

31-year sentence was sufficient, but not greater than necessary, to achieve the purposes of sentencing in Brown's case.

## CONCLUSION

Brown is eligible for relief under the plain terms of First Step Act § 404(b) as well as the narrower sentencing-package test supported by the Department of Justice. The government waived or forfeited its ability to challenge the grouping determination and the application of the sentencing-package doctrine to Brown's case, and, in any event, *Concepcion* prevents any court from un-grouping Brown's covered and non-covered offenses. Finally, the district court did not abuse its considerable sentencing discretion. For these reasons, this Court should affirm the district court's decision as to Mr. Brown.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Laura Danielle Mazor
s/Benton Martin
Attorneys for Gregory Brown
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5542
Laura_Mazor@fd.org
Benton_Martin@fd.org

Dated: February 6, 2024

61

**CERTIFICATE OF COMPLIANCE**

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains fewer than 13,000, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f). The brief contains 11,625 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen-point Century Schoolbook font.

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Mr. Brown designates as relevant the following documents in the district court's electronic record, Eastern District of Michigan case number 92-cr-81127:

| Record Number | Document Description | PageID Range |
|---|---|---|
| 882 | Second Superseding Indictment | 10277-92 |
| 1271 | Wilkes Sentencing Memorandum | 9268-70 |
| 1273 | Wilkes Judgment | 9260-66 |
| 1277 | O'Bryant Judgment | 10823-26 |
| 1592 | Judgment | 16023-28 |
| 1677 | Trial Transcript Volume IX | 11282-408 |
| 1680 | Sentencing Hearing Transcript | 11746-63 |
| 1714 | Wilkes Amended Judgment | 9254-59 |
| 1726 | O'Bryant Sentencing Memorandum | 10786-99 |
| 1731 | O'Bryant Amended Judgment | 10780-85 |
| 2360 | Defendant's Pro Se § 404 Motion | 17390-414 |
| 2386 | First § 404(b) Order | 17663 |
| 2391 | Defendant's Motion for Reconsideration | 17726-35 |

| 2397 | Defendant's Second Pro Se Supplemental Brief | 17764-94 |
| 2437 | Defendant's Counseled Supplemental Brief | 19281-302 |
| 2452 | Government's Opposition to Reconsideration Motion | 19431-41 |
| 2453 | Defendant's Reply to Reconsideration Motion | 19442-47 |
| 2458 | Defendant's Supplemental Reply Brief | 19482-83 |
| 2461 | Defendant's Second Supplemental Reply Brief | 19509-10 |
| 2469 | Culbert Order on Early Termination | 19555-56 |
| 2470 | Defendant's Third Supplemental Reply Brief | 19558-59 |
| 2514 | Order Denying Dale Compassionate Release | 20170-83 |
| 2541 | July 20, 2022 Opinion and Order Granting § 404 Motion in Part | 20518-42 |
| 2568 | Government's Sentencing Modification Proceeding Memorandum | 20652-79 |
| 2576 | Defendant's Sentencing Memorandum | 20900-24 |
| 2576-11 | U.S.S.C. Table | 20979-80 |
| 2576-12 | U.S.S.C. Table 2 | 20981-82 |
| 2582 | Amended Judgment | 21022-26 |
| n/a | Presentence Investigation Report | n/a |

## CERTIFICATE OF SERVICE

Counsel certifies that on February 6, 2024, the foregoing paper was filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification to opposing counsel.

s/Laura Danielle Mazor